FILED

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

2018 JUN 26 PM 2: 47

DISTRICT COURT
DISTRICT OF FLORIDA
ORLANDO, FLORIDA

UNITED STATES OF AMERICA

CASE NO. 6:18-cr- 150 · 0RL-40JK

v.                                          18 U.S.C. § 371

ERVING RODRIGUEZ

## **INFORMATION**

The United States Attorney charges that:

## **GENERAL ALLEGATIONS**

At all times material to this Information:

### A.    The TRICARE Program

1.     TRICARE was a health care program of the United States

Department of Defense ("DOD") Military Health System that provided

coverage for DOD beneficiaries worldwide, including active duty service

members, National Guard and Reserve members, retirees, their families, and

survivors.  Individuals who received health care benefits through TRICARE

were referred to as TRICARE beneficiaries.  The Defense Health Agency

("DHA"), an agency of the DOD, was the military entity responsible for

overseeing and administering the TRICARE program.

2.     TRICARE was a "health care benefit program," as defined by 18, U.S.C. § 24(b), that affected commerce, and as that term is used in 18 U.S.C. § 1347.

3.     TRICARE was a "health care benefit program," as defined by 42 U.S.C. § 1320a-7b(b).

4.     TRICARE provided coverage for certain prescription drugs, including certain compounded drugs that were medically necessary and prescribed by a licensed medical professional.  Express Scripts, Inc. ("Express Scripts") administered TRICARE's prescription drug benefits.

5.     TRICARE beneficiaries could fill their prescriptions through military pharmacies, TRICARE's home delivery program, network pharmacies, and non-network pharmacies.  If a beneficiary chose a network pharmacy, the pharmacy would collect any applicable co-pay from the beneficiary, dispense the drug to the beneficiary, and submit a claim for reimbursement to Express Scripts, which would in turn adjudicate the claim and reimburse the pharmacy directly or through a Pharmacy Services Administrative Organization ("PSAO").  To become a network pharmacy, a pharmacy agreed to be bound by, and comply with, all applicable State and Federal laws, specifically including those addressing fraud, waste, and abuse.

## B. **Compound Drugs Generally**

6.     In general, "compounding" is a practice in which a licensed pharmacist, a licensed physician, or, in the case of an outsourcing facility, a person under the supervision of a licensed pharmacist, combines, mixes, or alters ingredients of a drug or multiple drugs to create a drug tailored to the needs of an individual patient. Compounded drugs are not approved by the U.S. Food and Drug Administration ("FDA"); that is, the FDA does not verify the safety, potency, effectiveness, or manufacturing quality of compounded drugs. The Florida State Board of Pharmacy regulates the practice of compounding in the State of Florida.

7.     Compounded drugs may be prescribed by a physician when an FDA-approved drug does not meet the health needs of a particular patient. For example, if a patient is allergic to a specific ingredient in an FDA-approved medication, such as a dye or a preservative, a compounded drug can be prepared excluding the substance that triggers the allergic reaction. Compounded drugs may also be prescribed when a patient cannot consume a medication by traditional means, such as an elderly patient or child who cannot swallow an FDA-approved pill and needs the drug in a liquid form that is not otherwise available.

## C.   **Business Entities**

8.      Life Worth Living Foundation, Inc. d/b/a Life Worth Living Pharmacy ("Life Worth Living Pharmacy") was a Florida corporation incorporated on or about June 29, 2009, that had a principal place of business at 6488 Currin Drive, Suite 100, Orlando, Orange County, Florida. Life Worth Living Pharmacy was owned and operated by Michael Ayotunde, a pharmacist licensed in the State of Florida, and was a pharmacy that provided compounded drugs to TRICARE beneficiaries.

9.      ER Pro Corp. ("ER Pro") was a Florida corporation incorporated on or about December 5, 2013, that had a principal place of business at 7491 Conroy Windermere Rd, Suite D, Orlando, Florida.  ER Pro purported to be a marketing company in the health care industry.

## D.   **Defendant**

10.      Defendant ERVING RODRIGUEZ was the owner and operator of ER Pro.

## COUNT ONE
### Conspiracy to Solicit and Receive Health Care Kickbacks
### (18 U.S.C. § 371)

1.      Paragraphs 1 through 10 of the General Allegations section of this Information are realleged and incorporated by reference as though fully set forth herein.

2.      Beginning in or around January 2015 and continuing through in or around August 2015, in the Middle District of Florida, and elsewhere, the defendant,

### ERVING RODRIGUEZ,

did willfully and knowingly combine, conspire, confederate and agree with others known and unknown to the Grand Jury to commit an offense against the United States, that is:

a.      to violate 42 U.S.C. § 1320a-7b(b)(1)(A), by knowingly and willfully soliciting and receiving remuneration, including kickbacks and bribes, directly and indirectly, overtly and covertly, in cash and in kind, including by check, in return for referring an individual to a person for the furnishing and arranging for the furnishing of prescription compounded drugs, for which payment may be made in whole and in part by a Federal health care program, that is, TRICARE.

## Purpose of the Conspiracy

3.      It was a purpose and object of the conspiracy for the Defendant and his co-conspirators to unlawfully enrich themselves by, among other things: (a) soliciting and receiving kickbacks and bribes in return for referring TRICARE beneficiaries for prescription compounded drugs to Life Worth Living Pharmacy; and (b) submitting and causing the submission of claims to TRICARE for prescription compounded drugs purportedly provided to these TRICARE beneficiaries.

## Manner and Means of the Conspiracy

The manner and means by which the Defendant and his co-conspirators sought to accomplish the purpose and object of the conspiracy included, among others, the following:

4.      ERVING RODRIGUEZ owned and operated ER Pro to obtain prescriptions for compounded drugs for TRICARE beneficiaries from licensed medical professionals.

5.      Michael Ayotunde would pay and cause to be paid kickbacks to co-conspirators, including ERVING RODRIGUEZ, disguised as marketing payments to ER Pro, in exchange for prescriptions for compounded drugs for TRICARE beneficiaries.

6.     ERVING RODRIGUEZ and his co-conspirators would provide, and cause to be provided, signed prescriptions for compounded drugs for TRICARE beneficiaries to Michael Ayotunde at Life Worth Living Pharmacy.

7.     ERVING RODRIGUEZ, Michael Ayotunde, and other co-conspirators would submit and cause the submission to TRICARE of claims for these prescription compounded drugs, resulting in receipt of approximately $7,625,263.38 in reimbursement payments from TRICARE.

8.     ERVING RODRIGUEZ would receive kickbacks and bribes totaling approximately $3,185,155.96 from Michael Ayotunde in exchange for referring TRICARE beneficiaries to Life Worth Living Pharmacy.

### Overt Acts

In furtherance of the conspiracy, and to accomplish its object and purpose, at least one co-conspirator committed and caused to be committed, in the Middle District of Florida, at least one of the following overt acts, among others:

9.     On or about March 31, 2015, Michael Ayotunde paid $100,000 to ERVING RODRIGUEZ via wire from Life Worth Living Pharmacy's Regions Bank account ending in 8664 to ER Pro's BMO Harris Bank account ending in 8289.

7

10.     On or about April 9, 2015, ERVING RODRIGUEZ caused check number 1151 in the amount of $26,083.47 from Michael Ayotunde, through Life Worth Living Pharmacy's Regions Bank account ending in 0245, payable to "ER PRO CORP", to be deposited into ER Pro's BMO Harris Bank account ending in 8289.

11.     On or about April 29, 2015, Michael Ayotunde paid $500,000 to ERVING RODRIGUEZ via wire from Life Worth Living Pharmacy's Regions Bank account ending in 8664 to ER Pro's BMO Harris Bank account ending in 8289.

12.     On or about May 13, 2015, Michael Ayotunde paid $500,000 to ERVING RODRIGUEZ via wire from Life Worth Living Pharmacy's Regions Bank account ending in 8664 to ER Pro's BMO Harris Bank account ending in 8289.

All in violation of 18 U.S.C. § 371.

## FORFEITURE

1.     The allegations contained in Count One are incorporated by reference for the purpose of alleging forfeiture pursuant to the provisions of 18 U.S.C. § 982(a)(7).

2.     Upon conviction of a conspiracy to violate section 42 U.S.C. § 1320a-7b(b)(1)(A), in violation of 18 U.S.C. § 371, the defendant shall forfeit to

the United States, pursuant to 18 U.S.C. § 982(a)(7), any property, real or personal, which constitutes or is derived, directly or indirectly, from gross proceeds traceable to the offense.

     3.    The property to be forfeited includes, but is not limited to, the following: approximately $3,185,155.96 forfeiture money judgment, which represents the proceeds of the offense.

     4.    If any of the property described above, as a result of any act or omission of the defendant:

     a.    cannot be located upon the exercise of due diligence;

     b.    has been transferred or sold to, or deposited with, a third party;

     c.    has been placed beyond the jurisdiction of the court;

     d.    has been substantially diminished in value; or

     e.    has been commingled with other property which cannot be divided without difficulty;

the United States shall be entitled to forfeiture of substitute property pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b)(1).

MARIA CHAPA LOPEZ
United States Attorney

By: Alexander Kramer
Trial Attorney
Criminal Division, Fraud Section
U.S. Department of Justice

By: Joseph Beemsterboer
Deputy Chief
Criminal Division, Fraud Section
U.S. Department Of Justice

By: Roger B. Handberg
Assistant United States Attorney
Chief, Orlando Division